# UNITED STATES DISTRICT COURT
## (DISTRICT OF COLUMBIA)

| | |
|---|---|
| SONIA TAYLOR-WATSON<br>2319 Willow Shade Court<br>Logansville, GA 30057 | : <br> : <br> : |
| And | : |
| ASHLEY MARIE DAVIS<br>5224 Village Way<br>Nashville, TN 37211 | :     CASE NO:_____<br> : <br> : |
| And | : |
| JUSTIN COWLING<br>400 Army-Navy Drive #715<br>Arlington, VA 22202 | : <br> : <br> : |
|                                  **Plaintiffs** | : |
|       -vs- | : |
| K COLEMAN LEGAL DOCUMENT<br>PREPARATION, LLC<br>1629 K Street, N.W., Suite 300<br>Washington, D.C. 20006<br>(An unincorporated entity with no<br>registered agent) | : <br> : <br> : <br> : <br> : <br> : |
| And | : |
| KATRINA COLEMAN<br>13910 Castle Blvd. Apt. 101<br>Silver Spring, MD 20904 | : <br> : <br> : |
|                                  **Defendants.** | : |

## **COMPLAINT**

(Violations of the District of Columbia Wage Payment and Collection Law under D.C. Code § 32-1301 *et. seq.*, Breach of Contract, Fraud)

1. Plaintiffs bring this action to recover damages against Defendants for their willful failure to pay wages and accrued leave under the District of Columbia Wage Payment and

Collection Law ("DCWPCL") (D.C. Code § 32-1301 *et. seq*. and the District of Columbia Accrued Safe and Sick Leave Act ("ASSLA"), (D.C. Code § 32-131.01 *et. seq*.) and for their failure to reimburse them for hotel, flight and parking expenses that they incurred after resigning from their employment with K Coleman Legal Document Preparation, LLC on September 25, 2020.

## JURISDICTION AND VENUE

2. Jurisdiction is proper under 28 U.S.C. § 1332 (diversity of citizenship). The amount in controversy exceeds $75,000.00.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) because one of the Defendants resides in the District of Columbia and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District of Columbia.

## PARTIES

4. Plaintiff, Sonia Taylor-Watson, is an adult resident of the State of Georgia and was employed by the Defendant(s) from August 24, 2020 until September 18, 2020.

5. Plaintiff, Ashley Marie Davis, is an adult resident of the State of Tennessee and was employed by the Defendant(s) from August 24, 2020 until September 18, 2020.

6. Plaintiff, Justin Cowling, is an adult resident of the State of Virginia and was employed by Defendant(s) from August 24, 2020 until September 18, 2020.

7. Defendant, K Coleman Legal Document Preparation, LLC, is a District of Columbia *defacto* corporation that is engaging in tax preparation and legal services. Its principal member and chief executive officer is Katrina Coleman. However, upon information and belief, Katrina is not authorized to practice law in the District of Columbia or any other jurisdiction nor does she employ lawyers to practice law at her company.

8. Defendant, Katrina Coleman, is an adult resident of the State of Maryland. She is the founding member and chief executive officer of K Coleman Legal Document Preparation, LLC. She resides at 13910 Castle Boulevard, Silver Spring, MD 20904. She exercises ownership and control over the pay practices of K Coleman Legal Documents Preparation, LLC.

**FACTUAL ALLEGATIONS SPECIFIC TO SONIA TAYLOR-WATSON**

1. Plaintiff Taylor-Watson was hired as Director of Marketing by Defendant(s) Katrina Coleman and K Coleman Legal Document Preparation, LLC (the "Company" or "KCLDP") on August 24, 2020 at an hourly rate of $49.48. According to the offer letter dated August 11, 2020, and provided to her by KCLDP, she began to accrue Paid Time-Off (PTO) on September 14, 2020.

2. Prior to hiring Taylor-Watson, KCLDP agreed to reimburse Taylor-Watson for expenses that she incurred when she traveled to the District of Columbia to interview for the position. These expenses included hotel, airfare, rental car and parking.

3. Taylor-Watson incurred $695.92 in expenses. However, she was never reimbursed by KCLDP as promised once she began her employment.

4. According to her job description, Taylor-Watson was responsible for developing and implementing a marketing strategy for the KCLDP. However, once she began her employment, she was requested by the KCLDP to perform work unrelated to her job description. Despite this, she performed the services required by the KCLDP.

5. All services performed by Plaintiff Taylor-Watson as an employee were performed remotely from her residence in Loganville, Georgia.

6. On September 13, 2020, per Company request, Taylor-Watson submitted time sheets to Defendants K Coleman and KCLDP to reflect the number of hours that she worked for

3

each week.  Should she submit her timesheet by September 13, 2020, she was informed by Coleman and KCLDP that she would be paid Friday, September 18, 2020 for the work she performed.  However, she was not paid for any of the services that she performed on behalf of the Company.

7. After making several inquiries as to when she would be paid, Coleman informed Taylor-Watson that she would be paid on October 2, 2020 and that her check would be mailed to her residence.

8. On September 18, 2020, Taylor-Watson resigned from her employment with Defendants.

9. On October 9, 2020, Taylor-Watson received her check via U.S. Mail at her residence in Georgia.  However, it reflected an amount that was much less than the hours that she worked and it was **not signed** by Coleman or any other authorized representative of KCLDP.

10. Plaintiff Watson-Taylor worked 142 hours from August 24, 2020 to September 18, 2020.  The unsigned check mailed to her reflected a gross pay of $5,015.04.  However, she was actually owed gross pay of $6,485.14 according to her submitted time sheet.  At no time did KCLDP dispute the number of hours Plaintiff Taylor-Watson worked at the time she submitted her time sheet on September 13, 2020.

11. Taylor-Watson was eligible for two hours of PTO from September 14, 2020 through September 18, 2020.  The total amount of PTO owed to her after she resigned was $98.96 (based on an hourly rate of $49.48).  However, she was never paid her PTO by Coleman and/or KCLDP when she resigned.

**FACTUAL ALLEGATIONS SPECIFIC TO ASHLEY MARIE DAVIS**

12. Plaintiff Davis was hired by KCLDP as a Fundraising Coordinator on August 24, 2020 at an hourly rate of $39.66. According to the offer letter dated August 11, 2020 and provided to her by KCLDP, she began to accrue Paid Time-Off (PTO) on September 14, 2020.

13. Prior to hiring Davis, KCLDP agreed to reimburse Davis for expenses she incurred when she traveled for the District of Columbia to interview for the position. These expenses included hotel, airfare, rental car and parking.

14. Davis incurred $683.95 in expenses. However, she was never reimbursed by KCLDP as promised once she began her employment.

15. Davis was hired by KCLDP as director of development and marketing and performed services such as grant writing and putting together corporate sponsorship packages.

16. All services performed by Davis as an employee were performed remotely from her previous residences in Maryland and the District of Columbia.

17. On September 13, 2020, per Company request, Davis submitted timesheets to Defendants Coleman and KCLDP to reflect the number of hours that she worked for each week up to that point with the expectation that she would be paid by September 18, 2020. However, she was not paid for any of the services that she performed on behalf of the Company.

18. After making several inquiries as to when she would be paid, Coleman informed Davis via email that she would be paid on October 2, 2020 and that her check would be mailed to her residence.

19. On September 18, 2020, Davis resigned from her employment with Defendants.

20. On October 9, 2020, Davis received her check via U.S. Mail at her residence in Tennessee. However, it reflected an amount that was much less than the hours that she worked and it was **not signed**.by Coleman or any other authorized representative of KCLDP.

21. Plaintiff Davis worked 123 hours from August 24, 2020 to September 13, 2020. The unsigned check mailed to her residence reflected a gross pay of $5,125.87. However, she was actually owed gross pay of $4,878.18 according to her submitted time sheet. At no time did KCLDP dispute the number of hours that Davis worked at the time she submitted her time sheet on September 13, 2020.

22. Davis was eligible for two hours of PTO from September 14, 2020 through September 18, 2020. The total amount of PTO owed to her after her resignation was $86.00 (based on an hourly rate of $43.00). However, she was never paid her PTO by Coleman and KCLDP when she resigned.

### FACTUAL ALLEGATIONS SPECIFIC TO JUSTIN COWLING

23. Plaintiff Justin Cowling was hired by KCLDP as Director of Public Relations on August 24, 2020 at an hourly rate of $33.65. According to the offer letter dated August 9, 2020 and provided to him by KCLDP, he began to accrue Paid Time-Off (PTO) on September 14, 2020.

24. All services performed by Cowling as an employee were performed remotely from his former residence in the District of Columbia.

25. On September 13, 2020, per Company request, Cowling submitted timesheets to Defendants Coleman and KCLDP to reflect the number of hours that he worked for each week up to that point with the expectation that she would be paid by September 18, 2020. However, he was not paid for any of the services that he performed on behalf of the Company.

26. After making several inquiries as to when he would be paid, Coleman informed Cowling via email that he would be paid on October 2, 2020 and that his check would be mailed to his new residence in Arlington, Virginia.

6

27. On September 18, 2020, Cowling resigned from his employment with Defendants.

28. On October 9, 2020, Cowling received his check via U.S. Mail at a previous residence in the District of Columbia. However, it reflected an amount that was much less than the hours that he worked and it was **not signed** by Coleman or any other authorized representative of KCLDP.

29. Plaintiff Cowling worked 130 hours from August 24, 2020 to September 18, 2020. The unsigned check mailed to his residence reflected a gross pay of $2,422.80. However, he was actually owed gross pay of $4,374.50 according to his submitted time sheet. At no time did KCLDP dispute the number of hours that Cowling worked at the time he submitted his time sheet on September 13, 2020.

30. Cowling was eligible for two hours of PTO from September 14, 2020 through September 18, 2020. The total amount of PTO owed to him after his resignation was $67.30 (based on an hourly rate of $33.65). However, he was never paid his PTO by Coleman and KCLDP when he resigned.

**FACTUAL ALLEGATIONS SPECIFIC TO ALL PLAINTIFFS**

31. On or about October 16, 2020, Coleman agreed to meet with Plaintiff Cowling and another employee (Sarda Smith) – not currently represented by the undersigned – to provide a signed check to him and Ms. Smith as well as a signed check for Plaintiffs Taylor-Watson and Davis.

32. On October 17, 2020, Plaintiff Cowling presented his check to the bank for payment and was told there were insufficient funds. Plaintiffs Taylor-Watson and Davis' check were drawn from the same bank as the check provided to Plaintiff Cowling. Plaintiff Cowling

immediately contacted the Metropolitan Police Department and filed a criminal complaint against Ms. Coleman for criminal fraud.

## FACTUAL ALLEGATIONS SPECIFIC TO DEFENDANTS

33. Defendants Coleman personally hired Plaintiffs Taylor-Watson, Davis and Cowling as the principal member of KCLDP and set their rate of pay.

34. Defendants Coleman and KCLDP were responsible for paying Plaintiffs Taylor-Watson, Davis and Cowling.

35. At all relevant times, Defendant Coleman knew of KCLDP's pay practices and had the authority to control those pay practices.

36. At all relevant times, Defendant Coleman was the sole signature authorized on KCLDP's operating account for which checks to Plaintiffs would be issued from.

37. At all relevant times, all checks issued by KCLDP were either signed or supposed to be signed by Defendant Coleman.

38. Defendant Coleman willfully failed to pay Plaintiffs on at least two occasions: (1) upon the resignation of all plaintiffs; and (2) failing to sign the checks of all Plaintiffs once she agreed to mail them to all Plaintiffs.

39. At all relevant times, Defendants had the power to control Plaintiffs' work schedule.

40. At all relevant times, Defendants had the power to supervise and control Plaintiffs' work.

41. At all relevant times, Defendants were aware that they were legally required to pay Plaintiffs within seven (7) days of their resignation.

42. At all relevant times, Defendants were aware that they were legally required to timely pay Plaintiffs all wages legally due to them.

## COUNT I
## FAILURE TO PAY WAGES UNDER THE DCWPCL

### (As to all Defendants)

43. Plaintiffs incorporate the foregoing paragraphs as fully alleged herein.

44. Each defendant was an "employer" of Plaintiffs within the meaning of the District of Columbia Wage Payment and Collection Law, (DCWPCL) D.C. Code §32-1301(B).

45. The DCWPCL requires employers to pay employees (not having a written contract of employment for a period in excess of 30 days) who quits or resigns, wages upon the next regular payday or <u>within 7 days from the date of quitting or resigning, whichever is earlier</u>. <u>See</u> D.C. Code § 32-1303(2).

46. For purposes of the DCWPCL, "wages" include, among other things, regular, minimum, and overtime wages. <u>See</u> D.C. Code § 32-1303(3).

47. Defendants violated the DCWPCL by knowingly failing to timely pay Plaintiffs all regular wages legally owed to them for performance of work.

48. Defendants' violations of the DCWPCL were willful.

49. For their violations of the DCWPCL, Defendants are liable to Plaintiffs for unpaid wages, an amount equal to three times the amount of unpaid wages as liquidated damages, reasonable attorneys' fees and expenses, interest, court costs, and any other relief deemed appropriate by the Court. <u>See</u> <u>Martinez v. Asian 328, LLC</u>, 220 F. Supp.3d 117, 123 (D.D.C 2016) ("[T]he liquidated damages provision of the DCWPCL awards treble damages as liquidated damages *in addition to* the actual damages in the form of unpaid wages.")

## COUNT II
## BREACH OF CONTRACT
### (As to all Defendants)

50. Plaintiffs incorporate the foregoing paragraphs as specifically alleged herein.

51. Defendants offered to reimburse Plaintiffs Taylor-Watson and Davis any and all expenses incurred as a result of their travel to the District of Columbia for an interview with Defendants in August and September 2020.

52. Plaintiffs Taylor-Watson and Davis accepted this offer and incurred airfare, lodging and parking expenses as a result of meeting with the Defendants so that Defendants could conduct an in-person interview of them.

53. Plaintiff Taylor Watson is owed $695.92 in reimbursements that have yet to be paid by Defendants at the time of this filing.

54. Plaintiff Davis is owed $683.95 in reimbursements that have yet to be paid by Defendants at the time of this filing.

55. Despite repeated requests by Plaintiffs, Defendants refuse to reimburse Plaintiffs for the expenses that each incurred.

56. Pursuant to an August 11, 2020 offer letter given to Plaintiffs Davis and Cowling, Defendants also promise to pay up to 104 hours of accrued overtime (2 Hours/Week) beginning on September 14, 2020.

57. Plaintiffs Davis and Cowling worked from September 14, 2020 through September 18, 2020 but were never paid their PTO upon their resignation.

58. Plaintiff Davis is owed $86.00 in unpaid PTO (at a rate of $43.00 per hour) and Plaintiff Cowling is owed $67.30 in PTO (at a rate of $33.65 per hour)

59. Despite repeated requests by Plaintiff Davis and Cowling that they be paid PTO as outlined in their respective offer letters, Defendants refuse to pay PTO as promised.

## COUNT III
## FRAUD
## (As to all Defendants)

60. Plaintiffs incorporate the foregoing paragraphs as specifically alleged herein.

61. That Defendants falsely represented that the checks it tendered to Plaintiffs for payment for labor rendered could be cashed.

62. That Defendants knew or should have known that there were insufficient funds to cover the checks tendered to all Plaintiffs and they knew or should have known that those checks could not be cashed by Plaintiff.

63. That Defendants intended to deceive Plaintiffs by tendering checks totaling at least $12,563.71 to all three Plaintiffs with knowledge that those checks were deficient and could not be cashed by the Plaintiffs.

64. That Plaintiffs justifiably relied on the Defendants' representations (via her signature on bearer paper) that the checks tendered to them could be cashed.

65. That Plaintiffs' reliance that checks tendered to them by Coleman and the Company and/or its agents was reasonable.

66. That Plaintiffs suffered and continue to suffer damages and harm due to the nefarious, fraudulent actions of Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that this Court enter judgment against the Defendants, jointly and severally, in the current total amount of $250,000.00 and grant the following relief:

(1) Award Plaintiffs unpaid regular wages legally owed, plus three times the amount of unpaid wages as liquidated damages, pursuant to the DCWPCL under D.C. Code §§32-1303(4) and 32-1308; and

(2) Award Plaintiffs pre-judgment and post judgment interest as permitted by law; and

(3) Award Plaintiffs attorneys' fees and expenses computed pursuant to the matrix approved by <u>Salazar v. District of Columbia</u>, 123 F. Supp.2d 8 (D.D.C. 2000), and updated to account for the current market hourly rate for attorney's fees, pursuant to the DCWPCL pursuant to D.C. Code § 32-1308(b)(1) (as of this date: approximately $5,000.00); and

(4) An additional amount as punitive damages for the fraud committed by Defendants and detrimentally relied upon by Plaintiffs; and

(5) Award Plaintiffs court costs;

(6) Award and additional relief the Court deems just and proper.

DATED: October 23, 2020

Respectfully submitted,

SMITH GRAHAM & CRUMP, LLC

/s/ Jason C. Crump
_____
Jason C. Crump, Esq.
DC BAR NO.: 465205
4200 Parliament Place, Suite 220
Lanham, MD 20706
Tel: 301.925.2001
Fax: 301.925.2540
jcrump@smithgrahamcrump.com

*Counsel for Plaintiffs*